OPINION OF THE COURT
Adrienne Hofmann Scancarelli, J.
This matter is a textbook example of an ongoing child custody/visitation dispute in which both parents engage in conduct which will, at best, result in a hollow victory for one of them and continuing harm to the subject child.
The parties, the natural parents of William Michael, were divorced by decree entered on January 7, 1980 in Superior Court, Litchfield Judicial District, State of Connecticut. On August 15, 1980, that court awarded custody of the child to the respondent herein, allowing the petitioner herein scheduled visitation with the child. The Connecticut court explicitly retained jurisdiction of the matter “in the hope that if any problems arise in the future, they may be minimized or hopefully resolved.” The Connecticut court has made further orders regarding visitation since then. On February 24, 1981, the respondent’s motion for a stay of visitation resulted in an interim order for restricted visitation by the petitioner pending the court’s receipt of updated reports.
In January, 1980, the respondent and the child moved to Westchester County. The petitioner resides in Fairfield County, Connecticut.
*921 On September 26, 1980, the respondent filed a petition on behalf of the child against the petitioner in Family Court, Westchester County, alleging a family offense. Based upon her unilateral testimony, a temporary order of protection was issued. Following a hearing on December 18, 1980, the temporary order of protection was vacated and the petition was dismissed.
By petition dated December 8,1980, the petitioner seeks custody of William Michael B., born on May 9, 1977. By petitions dated December 8 and December 30, 1980, respectively, the petitioner seeks modification and enforcement of an order of the Superior Court of the State of Connecticut.
On February 4, 1981, at the preliminary proceeding on all three petitions, the respondent made an oral motion to dismiss the petitions pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA; Domestic Relations Law, art 5-A). The court requested and received memoranda from both sides, and reply papers were also subsequently filed.
Pursuant to section 75-n of the Domestic Relations Law, the courts of this State shall recognize and enforce a custody decree of a court of another State which had assumed jurisdiction under jurisdictional prerequisites substantially in accordance with the act. Pursuant to section 75-o of the Domestic Relations Law, a court of this State shall not modify a custody decree of a court of another State unless it appears that the court which rendered the decree “does not now. have jurisdiction under jurisdictional prerequisites substantially in accordance with” the act and the court of this State has jurisdiction (emphasis added).
Accordingly, where, as in the case at bar, there exists a custody decree by a court of another State, the threshold inquiry when a custody proceeding is commenced in this State is twofold. “First, it must be determined whether the sister State court had jurisdiction to render the custody decree and, second, whether, at the time the proceeding is commenced in this State, the sister State court would have jurisdiction to modify its decree.” (Clark v Clark, 67 AD2d 388, 390.)
*922 On the first issue, this court must assume that the Connecticut court’s initial assumption of jurisdiction , met the jurisdictional prerequisites contained in section 75-d of the Domestic Relations Law, as neither party has alleged otherwise and the court notes that the UCCJA has been adopted by Connecticut. (See Conn Gen Stats Ann, §§ 46b^ 90 — 46b-114.)
As to the second issue, it appears that in December, Í980, when the instant proceeding was commenced, the State of Connecticut no longer possessed jurisdiction in accordance with the UCCJA. New York became the “home state” of William Michael since he had resided here with his mother for over six months, including the time when the petitioner commenced this proceeding. (Domestic Relations Law, § 75-c, subd 5; § 75-d, subd 1, par [a].) The child no longer has a “significant connection” with that State, and since the custodial parent is here, substantial evidence concerning the child’s present or future care no loiiger exists in that State. (Domestic Relations Law, § 75-d, subd 1, par [b]; see Steinman v Steinman, 80 AD2d 892, app dsmd 54 NY2d 641.)
Nor are the jurisdictional requirements of section 75-d (subd 1, pars [c], [d]) of the Domestic Relations Law met by Connecticut. William Michael is not physically present in Connecticut and has not been for over a year; and it does appear that this State has jurisdiction under prerequisites substantially in accordance with the earlier paragraphs of subdivision 1 of section 75-d of the Domestic Relations Law.
The respondent seemingly asserts that because the Connecticut court expressly retained jurisdiction in its custody decree ánd has continued to exercise same, the “jurisdictional prerequisites” contemplated by subdivision 1 of section 75-o of the Domestic Relations Law haye either been met or are inoperative. This court disagrees. The reference to “jurisdictional prerequisites substantially in accordance with this article” pertains to section 75-d of the Domestic Relations Law, entitled “Jurisdiction to make child custody determinations”. Under the UCCJA, a court does not have jurisdiction by mere assertion. This court further rejects respondent’s contention that this court is required *923 to communicate with the Connecticut court since on December 7, 1980, the date the petition was filed, there was not “a proceeding concerning the custody of the child *** pending in a court of another state exercising jurisdiction substantially in conformity” with the UCCJA. (Domestic Relations Law, § 75-g, subd 1.)
The court further fails to comprehend how the respondent can seek the aid of this court in modifying the Connecticut court’s order of visitation by means of a family offense petition, while on the other hand, claim that this court lacks jurisdiction to modify that Connecticut order.
Based on the above analysis, it would appear that Connecticut would not have jurisdiction to modify its decree, and that this court has jurisdiction. However, application of the Parental Kidnapping Prevention Act of 1980 (PKPA) alters this result: “The appropriate authorities of every State shall enforce according to its terms, and shall not modify *** any child custody determination made consistently with the provisions of this section by a court of another State.” (US Code, tit 28, § 1738A, subd [a], amdg US Code, tit 28, ch 115; emphasis added.)
The only exception to the above obligation is that a court may modify a custody determination of another State if:
“(1) it has jurisdiction to make such a child custody determination; and
“(2) the court of the other State no longer has jurisdiction, or it has declined to *** modify such determination.” (US Code, tit 28, § 1738A, subd [f]; emphasis added.)
Where the UCCJA provides bases for jurisdiction which are alternative to the “home state”, the PKPA confers exclusive and continuing jurisdiction on the home State. (See, also, US Code, tit 28, § 1738A, subd [c], par [2], cl [E]; subd [d].)
Thus, the spirit of the PKPA is clear, and in accord with what will be mandated in future cases, it is applied to the case at bar. The Connecticut court has continued to exercise jurisdiction and until it declines to do so, this court will defer to the jurisdiction of Connecticut, the home State, which in fact remains the residence of one of the contestants. (See US Code, tit 28, § 1738A, subd [d].) This result *924 is compatible with the disapproval of forum shopping which is reflected in New York case law. (See, e.g., Vanneck v Vanneck, 49 NY2d 602; cf. Nicols v Nicols, 76 AD2d 910.)
The petitioner is not without remedy in this State. Pursuant to subdivision 1 of section 75-p of the Domestic Relations Law, a certified copy of a custody decree of another State which is filed in the office of the clerk of the Supreme or Family Courts of this State has “the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state.” For UCCJA purposes, a custody decree includes orders pertaining to visitation rights. (Nicols v Nicols, supra, at p 911; see Domestic Relations Law, § 75-c, subds 2, 4.)
The motion to dismiss is granted. Of course, the petitioner is not precluded from returning to this court should the Connecticut court, in the future, decline jurisdiction over this matter or rule that New York would be a more appropriate forum to hear this matter.