OPINION OF THE COURT
Orazio R. Bellantoni, J.
The paramount issue before this court is whether New York or Arizona is the more appropriate forum to litigate the custody issues involving Elizabeth (six years old) and Michael A. Mancusi, Jr. (four years old) (see, Domestic Relations Law § 75-g; Ariz Rev Stat Annot § 8-406; 28 USC § 1738A).
PROCEDURAL BACKGROUND
This matter initially came before the New York Family Court on April 10, 1987 (see, this court’s decision and order dated May 14, 1987 [Bellantoni, J.]) after Michael Mancusi, Sr. (hereinafter petitioner) filed a petition for a writ of habeas corpus, dated March 30, 1987, alleging that his son, Michael, was being illegally detained by Elizabeth Mancusi, petitioner’s wife (hereinafter respondent). In court, at the initial appearance, petitioner further alleged that respondent had taken his son and was living as a transient in a storage trailer. He contended that the child’s mental and physical well-being were in imminent danger. Respondent was served with a copy of the writ, but chose not to appear or answer the allegations of the petition for the writ. Accordingly, the court, after considering the paramount issue of the child’s immediate safety, awarded petitioner temporary custody of his son, Michael.
Additionally, petitioner filed a custody petition, dated March 30, 1987, requesting that this court award him custody of Michael and Elizabeth Mancusi. Respondent was served with the summons and petition and again failed to appear or answer the petition. The court, on April 23, 1987, awarded temporary custody of Elizabeth to petitioner.
Subsequently, respondent filed a petition for a temporary restraining order (T.R.O.) in the Arizona Superior Court, Pima County. A hearing on the T.R.O. was scheduled for April 27, 1987. It is assumed that respondent sought to enjoin the New York State Family Court from determining the custody issue. However, this court has not received a copy of these papers.
Thereafter, this court, during the course of its proceedings, *900 was informed that respondent had initiated, in Arizona, a proceeding for the custody of the children. Pursuant to Domestic Relations Law § 75-g (3), this court communicated with the Arizona court (Judge Houghton) to discuss the more appropriate forum to litigate these issues. Simultaneously, the court in Arizona stayed all custody proceedings pending before it involving these parties (see, Ariz Rev Stat Annot § 8-406). The court in Arizona, after discussion with this court, issued an order scheduling and setting forth the issues to be discussed at a conference to determine the more appropriate forum to decide the custody issues presently before both courts.
Pursuant to the Arizona order, a telephonic conference was held on May 6, 1987, between the Judges, the Arizona attorneys for the parties and petitioner’s New York attorney. Unfortunately, the attorney appointed by this court to represent the children in the New York proceedings arrived late and was unable to fully participate.
As a result of the conference, it was determined and agreed between the parties that the more appropriate forum to litigate the custody issues surrounding Michael was Arizona. (Subsequently, petitioner withdrew his consent on this issue, however, that does not affect this court’s decision for the reasons set forth below.) This court reserved decision on the more appropriate forum for Elizabeth.
Thereafter, petitioner’s New York attorney requested time to prepare a memorandum of law in support of his position. Because of the interaction between the State statutes and the Federal law (see, 28 USC § 1738A) with respect to enforcement, according full faith and credit to a custody order of another State, and the possible preemption of State statute by Federal law, this court determined that it was in the best interests of all parties and the children to permit them to submit memoranda of law in support of their respective arguments.
A schedule for submission of papers was established. This court received memoranda of law from petitioner and respondent.
FACTUAL BACKGROUND
During the conference held on May 6, 1987 the parties agreed to certain facts. Additionally, after a careful reading of the submitted papers, certain uncontroverted facts have come to light.
*901 The parties were married in New York State on June 20, 1979. A daughter, Elizabeth, was born in this State on September 5, 1980. Michael, the parties’ son, was born in New York on February 5, 1983.
The parties, together with their children, resided in New York State until sometime in 1985. During 1985, the family moved to Arizona. They lived in Arizona as a family until sometime in March of 1987.
At that time, petitioner along with his daughter Elizabeth left Arizona and returned to New York to live with petitioner’s parents (the child’s paternal grandparents). The parties disagree about who (petitioner or respondent) left the marital residence first. Petitioner claims that he left Arizona after respondent abandoned him and absconded with Michael. Contrarily, respondent alleges that petitioner left respondent and unilaterally removed Elizabeth from Arizona without her permission.
Presently, petitioner resides with his parents and daughter in this State and is employed by a plumbing supply business. Elizabeth is enrolled in kindergarten and, by all accounts, enjoys a warm relationship with her grandparents.
LAW
To resolve the jurisdictional issue in this interstate custody dispute this court must analyze the interaction between applicable State and Federal laws (Domestic Relations Law § 75-a et seq.; Ariz Rev Stat Annot § 8-401 et seq.; 28 USC § 1738A; see, Ferguson v Ferguson, 130 Misc 2d 709, 714-715 [Fam Ct, Rockland County 1985]). To the extent that the requirements of the Federal Parental Kidnaping Prevention Act of 1980 (28 USC § 1738A; hereinafter PKPA) and the New York Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-a et seq.; hereinafter New York UCCJA) as well as the Arizona Uniform Child Custody Jurisdiction Act (Ariz Rev Stat Annot § 8-401 et seq.; hereinafter Arizona UCCJA) do not directly conflict or the application of the New York and Arizona UCCJAs would not be inconsistent with the PKPA, the statutes are complementary. However, in cases of conflict or inconsistency, under the Supremacy Clause of the US Constitution, the PKPA preempts the UCCJA of the respective States. (Enslein v Enslein, 112 AD2d 973, 975 [2d Dept 1985]; Matter of Mark L. v Jennifer S., 133 Misc 2d 454, 458 [Fam Ct, Schoharie County 1986]; Matter of Sherry Ann F. v Bennett S., *902 131 Misc 2d 854, 856 [Fam Ct, Schoharie County 1986]; Ferguson v Ferguson, supra, at 715; Matter of Diane W. v Norman W., 112 Misc 2d 114, 115 [Fam Ct, Kings County 1982].) The PKPA must be accorded priority (Matter of Diane W. v Norman W., supra).
The UCCJAs of the respective States establish procedures to obtain subject matter and personal jurisdiction over contestants to an initial proceeding in an interstate custody dispute (Mayoff v Robin, 115 AD2d 524, 526 [2d Dept 1985]). The PKPA jurisdictional standards do not govern jurisdiction to render an initial custody decree in State courts. However, for a State’s initial custody decree to be entitled under Federal law to enforcement and nonmodification in another State, that State court must have exercised jurisdiction consistent with the PKPA (28 USC § 1738A [a]).
Unlike the UCCJA which accords equal weight to its several jurisdiction bases (see, Domestic Relations Law § 75-d [1] [a]-[d]; Ariz Rev Stat Annot § 8-403), the PKPA gives a distinct priority to the State court which exercises jurisdiction under the "home State” basis (see, Domestic Relations Law § 75-d [1] [a]; Ariz Rev Stat Annot § 8-403 [A] [1]) over a State court exercising jurisdiction based on the parties or children having a "significant connection” (see, Domestic Relations Law § 75-d [1] [b]; Ariz Rev Stat Annot § 8-403 [A] [2]) with the State in interstate custody proceedings (see, 28 USC § 1738A [c] [2]). It seems that this Federal legislative construction is intended to encourage States exercising "significant connection” jurisdiction to defer to States exercising "home State” jurisdiction if jurisdiction exists concurrently in simultaneously occurring custody proceedings in two different States.
Manifestly, unless a State has continuing jurisdiction under the terms of the Federal law (28 USC § 1738A [c] [2] [E]; [d]), the PKPA makes it judicially imprudent for one State court to exercise jurisdiction when another State court fulfills the requirements and wishes to exercise "home State” jurisdiction (see, Enslein v Enslein, supra, at 975). If conflicting custody decrees were issued, only the custody decree of the "home State” court would be entitled to full faith and credit under Federal law.
Additionally, because of the priority afforded to "home State” jurisdiction under the PKPA, a State court exercising jurisdiction under the "home State” basis would not be prohibited from exercising its jurisdiction even though a custody *903 proceeding involving the same parties and children was already pending in another State court which was exercising jurisdiction under the "significant connection” basis (28 USC § 1738A [g]). In contrast, under the UCCJA, a State court is forbidden from exercising jurisdiction on any basis, if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another State (Domestic Relations Law § 75-g; Ariz Rev Stat Annot § 8-406).
Patently, under the more restrictive Federal statutory scheme, no matter which action was commenced first (and in the case at bar there is no dispute that the New York action was commenced first) only the custody decree of the State that exercised jurisdiction consistent with the PKPA would be entitled to enforcement (see in general, Hoff, Schulman, Volenik and O’Daniel, Interstate Child Custody Disputes and Parental Kidnapping: Policy, Practice and Law [Legal Servs Corp-ABA). Accordingly, it is in the best interests of the children who are the subject of these proceedings to have one custody decree which complies with the applicable provisions of the PKPA and the New York and Arizona UCCJAs.
Based on the foregoing, it is essential to determine the children’s "home State” for custody purposes. Home State under the PKPA is defined as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or person acting as parent, for at least six consecutive months” (28 USC § 1738A [b] [4]). It is similarly defined under the Arizona UCCJA (Ariz Rev Stat Annot § 8-402 [5]).
The wording of New York’s definition of "home State” is slightly different. It states that a home State is, "the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months” (Domestic Relations Law § 75-c [5]). It has been implicitly determined that the New York statute recognizes that home State means the State in which the child has resided for six consecutive months immediately prior to the commencement of the custody proceeding (see, Mayoff v Robin, 115 AD2d 524, 526, supra [2d Dept 1985]; People ex rel. Throneberg v Butcher, 102 AD2d 693, 694 [3d Dept 1984]; Clark v Clark, 67 AD2d 388, 390 [3d Dept 1979]).
Indeed any other interpretation of the New York UCCJA would be untenable. It is inconceivable, as petitioner asserted *904 at the conference and seems to reassert in his memorandum, that the home State of a child is any State in which a child lives for six consecutive months. Based on this interpretation a child who, at birth, becomes the subject of a protracted custody dispute could potentially have as many as 36 home States (18 years divided by 6 consecutive months equals 36 home States).
Unequivocally, both children immediately preceding the commencement of the proceeding in New York resided with their parents in Arizona for more than six consecutive months (for nearly two years). Accordingly, under the PKPA and the UCCJA, as enacted by both States, the "home State” of Elizabeth and Michael Mancusi is Arizona.
Certainly, New York has a colorable basis to exercise jurisdiction in this matter. Both children, as well as their father, having lived in this State for a majority of their lives, have significant connections to this State and there exists in New York substantial evidence concerning the children’s present or future care, protection, training as well as personal relationships (see, Vanneck v Vanneck, 49 NY2d 602, 610 [1980]; Gomez v Gomez, 86 AD2d 594 [2d Dept 1982], affd 56 NY2d 746 [1982]; Charpentier v Charpentier, 98 AD2d 740 [2d Dept 1983], appeal dismissed 62 NY2d 804 [1984]). However, after determining that a jurisdictional basis exists, a court must balance many factors, particularly the best interests of the children, before exercising such jurisdiction (Boutros v Boutros, 106 AD2d 536, 539 [2d Dept 1984]).
After conferring with the Arizona State court (Judge Houghton) and the parties as well as reviewing the papers submitted together with the applicable law, this court finds that the more appropriate forum to litigate this custody dispute is Arizona. Arizona is the children’s "home State” and a custody decree from that State would be entitled to full faith and credit under Federal law (28 USC § 1738A). Additionally, the PKPA prohibits modification of such a custody decree except under very limited circumstances. This determination avoids the problem of conflicting State custody orders, promotes judicial economy, and furthers the intent of the Federal as well as the State statutes.
More importantly, this decision fosters a sense of stability and continuity for these two children. The custody issues will be litigated in the Arizona court which will exercise continuing jurisdiction under both State and Federal statutes (28 USC *905 § 1738A [d]; Ariz Rev Stat Annot §§ 8-406, 8-412). Additionally, evidence and witnesses who could testify about the children and the parental fitness of both parties for the last two years would be readily available to the Arizona court.
Fortunately, the drafters of the UCCJA envisioned situations in which substantial evidence about a child’s future or present care, protection, training and personal relationships— essential to an informed and just decision in a custody proceeding — existed in another State. Appropriately, they enacted certain procedural devices which permit discovery and introduction of that evidence in determining custody (see, Domestic Relations Law §§ 75-r — 75-v; Ariz Rev Stat Annot §§ 8-418 — 8-421). The Arizona court is empowered to use these devices to gather all relevant information in this jurisdiction to make a determination in the children’s best interests.
Accordingly, it is hereby
Adjudged that the home State of Elizabeth and Michael Mancusi is Arizona; and it is further
Adjudged that the more appropriate forum to litigate this custody dispute is Arizona; and
Now it is hereby
Ordered that all previous custody orders issued by this court are vacated; and it is further
Ordered that the petition for a writ of habeas corpus and the custody petition (V-614-87 and 615-87) are dismissed.